# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

MAY 0 4 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Pink Apple iPhone<br>Serial # G0NZ73S8KPFR<br>IMEI 353133100910787 | Case No. **20MJ9136** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____SOUTHERN____ District of ____CALIFORNIA____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963 | Importation of a Controlled Substance; Conspiracy to Commit the Same |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations Special Agent Justin Buscaglia, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Justin Buscaglia, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: 4/30/2020

*Judge's signature*

City and state: El Centro, California      HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Pink Apple iPhone
> Seized as FP&F No. 2020250300055701
> IMEI 353133100910787
> Serial Number G0NZ73S8KPFR
> ("Target Device ")



The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 27, 2020, up to and including April 27, 2020:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## AFFIDAVIT

I, Special Agent Justin Buscaglia, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>Pink Apple iPhone
>Seized as FP&F No. 2020250300055701
>IMEI 353133100910787
>Serial Number G0NZ73S8KPFR
>("Target Device ")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Maria de Jesus AGUILAR ("Defendant") for importing approximately 40.30 kilograms (88.66 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 2015. I am currently assigned to the Immigration and Customs Enforcement HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I am a graduate of the Criminal Investigator Training Program and Immigration and Customs Enforcement, Special Agent Training Program at the Federal

Law Enforcement Training Center. I also have a Bachelor's degree from San Diego State University in Criminal Justice. I am presently assigned to a Contraband Smuggling Group with HSI. I am also cross-designated by the United States Drug Enforcement Administration ("DEA") to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substances Act. I have been employed as a Law Enforcement Officer with the United States Government since September 2001. I have been employed by the U.S. Immigration and Naturalization Service, Customs and Border Protection and Enforcement and Removal Operation within Immigration and Customs Enforcement. I have received training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. I have also received training in the methods used by controlled substance traffickers to transport the proceeds of illegal drug trafficking.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For

example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

3

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On April 10, 2020 at approximately 7:49 p.m., Maria de Jesus AGUILAR (AGUILAR), a citizen and national of the United States of America, entered the United States at the Calexico, California West Port of Entry via the vehicle primary lanes as the driver and sole occupant of a 2011 Mercedes-Benz R350.

8. The primary inspector Customs and Border Protection Officer (CBPO) J. Castillo who was manning vehicle primary lane 5 took a negative oral customs declaration from AGUILAR. AGUILAR claimed to be a United States Citizen by birth in Riverside, California. AGUILAR provided a valid California Driver's License bearing her name and photo and a County of Riverside birth certificate bearing her name to support her claim. AGUILAR stated she was returning to Eastvale, California after dropping off a relative in Mexicali, Mexico. CBPO J. Castillo opted to refer AGUILAR to secondary screening for a more in-depth inspection.

9. Once in secondary CBPO J. Rodriguez conducted a scan of the Mercedes-Benz utilizing the Z-Portal. CBPO J. Rodriguez observed several anomalies in the floorboard of the vehicle. CBPO J. Rodriguez notified secondary CBPO J. Maldonado of his findings. A Canine Enforcement Officer (CEO) conducted a search of the vehicle utilizing a Human/Narcotics Detection Dog (HNDD) which alerted and responded to passenger side rocker panel area of the vehicle. The CEO informed CBPO J. Maldonado of the positive alert. CBPO J. Maldonado received a negative Customs declaration from AGUULAR and proceeded to conduct a seven-point inspection of the vehicle. CBPO J. Maldonado discovered a non-factory compartment within the floorboard under the front and middle row seats of the vehicle. CBPO J. Maldonado obtained access to the

4

1  compartment and removed a total of fifty-six (56) packages. The packages contained a
2  crystal-like substance that CBPO C. Roberts field-tested utilizing the GEMENI test kit.
3  The results returned positive for the presence of Methamphetamine. The total combined
4  weight was approximately 40.30 kilograms (88.66 pounds) of Methamphetamine.

5      10.    During a pat down of AGUILAR, a pink iPhone (the Target Device) was
6  located in AGUILAR's purse located on her person. AGUILAR claimed ownership of
7  the Target Device. AGUILAR provided the number to the Target Device as (760) 514-
8  5313. AGUILAR did not give consent to search the Target Device. The Target Device was
9  subsequently seized as evidence.

10      11.    Based upon my experience and training, consultation with other law
11  enforcement officers experienced in narcotics trafficking investigations, and all the facts
12  and opinions set forth in this affidavit, I believe that telephone numbers, contact names,
13  electronic mail (email) addresses, appointment dates, messages, pictures and other digital
14  information are stored in the memory of the Target Device. In light of the above facts and
15  my experience and training, there is probable cause to believe that Defendant was using
16  the Target Device to communicate with others to further the importation of illicit narcotics
17  into the United States. Further, in my training and experience, narcotics traffickers may be
18  involved in the planning and coordination of a drug smuggling event in the days and weeks
19  prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will
20  continue to attempt to communicate with a defendant after their arrest to determine the
21  whereabouts of the narcotics. Based on my training and experience, it is also not unusual
22  for individuals, such as Defendant, to attempt to minimize the amount of time they were
23  involved in their smuggling activities, and for the individuals to be involved for weeks and
24  months longer than they claim. Accordingly, I request permission to search the Target
25  Device for data beginning on January 27, 2020, up to and including April 27, 2020, the day
26  after AGUILAR's arrest.

27
28

5

## METHODOLOGY

12. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

13. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

14. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

6

1  identification and extraction of data will complete the analysis within ninety (90) days of
2  the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

15. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. Consent was not given.

### CONCLUSION

16. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Justin Buscaglia
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of April, 2020.

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Pink Apple iPhone
>
> Seized as FP&F No. 2020250300055701
>
> IMEI 353133100910787
>
> Serial Number G0NZ73S8KPFR
>
> ("Target Device")



The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave., Suite 100, El Centro, CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 27, 2020, up to and including April 27, 2020:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.